(No. 67037.—

*In re* GLENN ROBERT BEHNKE, Attorney, Respondent.

*Opinion filed March 22, 1989.*

CALVO, J., took no part.

William F. Moran, III, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Glenn Robert Behnke, of Rantoul, respondent *pro se*.

JUSTICE WARD delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a 10-count complaint against Glenn Robert Behnke, who was admitted to the bar of Illinois in 1974, alleging misconduct in the course of representing three clients. Basically it was alleged that the respondent had lied to clients and to another attorney regarding the providing of legal representation. The complaint charged conduct involving dishonesty in violation of Canon 1, Rule 1—102(a)(4) (107 Ill. 2d R. 1—102(a)(4)), conduct prejudicial to the administration of justice in violation of Canon 1, Rule 1—102(a)(5) (107 Ill. 2d R. 1—102(a)(5)), neglect of a legal matter entrusted to him in violation of Canon 6, Rule 6—101(a)(3) (107 Ill. 2d R. 6—101(a)(3)), failure to carry out a contract of employment entered into with a client for professional service in violation of Canon 7, Rule 7—101(a)(2) (107 Ill. 2d R. 7—101(a)(2)), prejudicing and damaging a client and making a false statement of fact in violation of Canon 7, Rules 7—101(a)(3) and 7—102 (107 Ill. 2d Rules 7—101(a)(3), 7—102); and conduct that tends to bring the courts and the profession into disrepute in violation of Rule 771 of the Illinois Supreme Court rules (107 Ill. 2d R. 771). The allegations of misconduct were not admitted by the respondent in his answer to the complaint but were, with only minor exceptions, admitted in the respondent's testimony before the hearing panel.

Douglas Hudson was injured in a motorcycle accident, and his wife and he engaged the respondent to represent them to recover damages sustained as the result of the accident. Hudson and his wife had believed that the respondent, from shortly after the accident in April 1980, was representing them and had been told by the respondent that he had filed suit in their behalf. In September 1983 the respondent informed them that the suit had been dismissed on the defendants' motion for summary judgment. The respondent later made the same statement to another attorney regarding the supposed lawsuit and its dismissal. In fact, no lawsuit had been filed and the statute of limitations had run on the Hudsons' claims. The Hudsons sued the respondent for malpractice and settled their claim with the respondent's malpractice carrier for $30,000.

The respondent represented a school district on a general retainer and regularly attended meetings of the school board and provided advice to the district while attending meetings or by phone or letter. In July 1981 the school board retained him specially to contest a claim for unemployment filed by a former employee. The specific direction was that the respondent was to appeal from a preliminary determination of the claim, which had been adverse to the district. In the period from September 1981 through March 24, 1982, the respondent wrote six times to the school district describing various actions he said he had taken regarding the appeal, including dates and places where hearings were allegedly scheduled or heard. The representations in these letters were false. The respondent had not filed an appeal and did nothing regarding an appeal. The dates and the places of the described hearings were fictitious. His malpractice carrier subsequently settled the school district's claim for $15,000.

During 1981 and 1982 the respondent was retained by the First National Bank of Rantoul to collect on debts owed the bank. The bank had requested regular reports of the action taken by the respondent on seven accounts, and the respondent wrote to the bank and provided the bank with a monthly "status report" of each case. These letters and monthly reports were admitted in evidence as administrator's exhibits and, to use the hearing panel's language, they contained more lies and fabrications than truths. In regard to any significant action claimed by him, the reports lied. To illustrate, with regard to three counts of the complaint, the respondent informed the bank that he had filed suits and that the defendants had been served. No suit had been filed. Referring to another count, the respondent reported that he had filed suit and that the defendant's attorney had filed a general denial and a deposition had been scheduled. This was fiction. In another matter, he informed the bank suit had been filed, judgment obtained and foreclosure proceedings instituted. He also reported that the property had been sold at the foreclosure sale. The respondent was vague as to whether he had even filed suit, but he acknowledged that there had been no foreclosure proceeding and, of course, no foreclosure sale. He wrote in another case that he had initiated a citation to discover assets proceeding and that the defendant had been served and a definite hearing date fixed. No proceeding had been initiated. In another report he informed the bank that he had filed a foreclosure suit and that hearings had been held and that there had been discussions with the defendant's attorney. The report was false.

The hearing panel reported what was the respondent's explanation for this flagrant misconduct:

"1. He [the respondent] did not care for the relationship he had with his partners, one of whom was the director of the bank involved;

2. His clients did not have very good cases and probably would have lost them anyway;

3. He was under pressure to complete his work;

4. He was under a strain awaiting the adoption of a child;

5. He was drinking more than usual, but not enough to seek any professional help; and

6. He received no monetary gain because of his actions."

The hearing panel reported that it gave the respondent opportunity to expand or emphasize any of the above factors as mitigation but that the respondent did not do so. The panel concluded that the respondent had repeatedly lied to these clients over a period of several years, and that there was deliberate dishonesty, and it recommended his disbarment.

When the matter came before the Review Board in April 1987, the Board remanded for further hearing. The respondent, appearing on November 16, 1987, *pro se*, as he had done in the first hearing before the panel, requested a 60-day extension of time to seek a psychiatric evaluation and/or care (the remand by the Review Board was for the purpose of taking additional evidence). The respondent argued that he was unaware that the burden was placed on him to go forward with evidence regarding any physical or psychological disability and, therefore, the additional time was needed. He did acknowledge that the hearing panel on October 7, 1987, had set the matter for hearing on November 16 and had informed him of his obligation under the Commission rules to produce for the Administrator all reports prepared by expert witnesses he consulted or intended to call as witnesses. The respondent said that he did not make any disclosure to the Administrator since he had no witnesses to disclose. He acknowledged, too, that he was

aware of the Review Board's order of April 16, 1987, which remanded the matter to the hearing panel.

At the second hearing the panel found that the respondent was given full opportunity at the original hearing to present evidence of any disability and was given the same opportunity by the Review Board through its remandment and by the hearing panel at the new hearing. The panel noted that the respondent had waited until the very day of the hearing before making an oral motion for continuance though he had ample opportunity to make a written timely motion with supporting affidavits as the Commission rule requires, but had failed to do so. The panel denied the motion for continuance, concluding that further delay would serve no useful purpose under the circumstances and would not be in the best interest of either the respondent or the petitioner. The panel noted in considering the motion for continuance that "the respondent exhibited no patent disability; he was lucid and quite communicative." After the denial of the continuance, the hearing panel's report notes, the panel inquired of both parties as to whether either wished to present evidence and the respondent was specifically requested to present any evidence he might have. The respondent stated that he had no such evidence. The panel recessed the hearing and, as the report states, it then reviewed the file and discussed the questions involved. The panel noted that the Review Board had remanded for the taking of further evidence related to respondent's possible alcohol or substance abuse problems or any other psychological or emotional impairment that he might have been laboring under in the period involved. Further, the remand was to permit a determination whether there were any current mental or emotional problems that would impair his fitness to practice law. The panel noted that the respondent did not present any evidence to support an argument that he was im-

paired in any manner. The panel said that it was obvious that since no further evidence was offered by the respondent or by the Administrator no further findings of fact could be made other than that when the respondent appeared, he conducted himself properly; it observed: "he was lucid, communicative and clearly aware of his situation and circumstances." The panel stated that it had reviewed its earlier report and noted that at the first hearing the respondent claimed that he had been under emotional stress and had been drinking more than he should have. The panel noted that it asked him then, as it did at the second hearing, if he had sought any psychological aid and he responded that he had not. The panel noted that the respondent claimed other matters as mitigation of his offenses, such as not caring for his relationship with his partners and the other factors cited in the hearing panel's first report. The panel stated that at neither hearing did the respondent express any remorse for his conduct nor for that matter did he indicate that he had done anything wrong. The opinion of the panel was that his misconduct was flagrant and that these were not isolated incidents of deception. The panel concluded that there was nothing to alter its earlier findings and recommendation of disbarment. The Review Board concurred with the panel's findings of fact and conclusions of law and joined in the recommendation that the respondent be disbarred. No Review Board member dissented.

In the brief filed in this court, the respondent states that there is no dispute so far as the factual basis of the report of the hearing panel and the documented complaints received by the Attorney Registration and Disciplinary Commission. He then goes on to say that he did in fact deceive the bank and apparently admits what occurred in the case of the Hudsons, but he denies any improprieties in the school district matter. The brief states

that the issues are whether his motion for continuance should have been allowed and whether his conduct warranted the extreme sanction of disbarment. He disagrees strongly with the observation of the hearing panel that he did not express remorse or regret, and several times in his brief says that he has stated his remorse and that his agreement with the factual bases for the complaint itself shows his remorse. He notes that in the bank matter the principal complaining witnesses against him were his former partners and not the president of the bank. The president would have been a witness but died prior to the hearing.

He points out that the incidents involved occurred in the period from 1978 to 1981 and that the proceedings against him were not filed until 1985. It is not disputed that he did not receive any monetary compensation or benefit in the matters involved and that in a typical disciplinary case the offending attorney has collected fees or has had financial benefits. He says that in the bank's cases he requested advances to cover costs of suits but never received any. It appears that he did in other cases properly make collections for the bank, and he states that he requested from the president of the bank on numerous occasions reimbursement apparently for costs advanced and was never reimbursed. As to the school district, he says he never received any fee over and above his retainer fee from the district. He says his case is unique so far as the absence of benefits is concerned and this circumstance alone is mitigating and calls for a sanction less than disbarment. He says it appears that no client involved here suffered irreparable harm. The statute of limitations had not run on any of the bank matters complained of. The respondent states that he cooperated fully with regard to the claims of the Hudsons and the school district against his malpractice carrier and he paid the deductible when the cases were settled. He stated

that while he is not attempting to deny culpability, the factors in mitigation, though personal, are important. He notes that at the time of the false representations to the bank, the bank had a pending lawsuit against him which created a cloud over the attorney-client relationship. Admittedly, he should have dealt with it in a different fashion. He says insufficient attention was paid to the question of the relationship between him and his partners and notes that the complaining witnesses in the bank matters were his former partners. He says insufficient attention too was paid to the stress he underwent because of a pending adoption he and his wife were trying to complete. He says that the drinking problem is now remembered by him as a severe problem at that time. He points out that a drinking problem can influence conduct though it may not amount to alcoholism. He says the remand by the Review Board was apparently to have additional information on the drinking problem but he was given no specific instructions on how to proceed. Somewhat ambiguously he says, too, that if a psychologist had been gotten for examination, there could have been no specific findings of alcoholism or emotional instability at the time of the personal problems. He says in any event personal problems should be looked at as mitigating in light of the lack of any long-term harm to the clients involved. Respondent says that the portion of his practice which was involved in this unhappy proceeding is minute. He is a general practice attorney in a community of about 20,000 and could not successfully practice if he were constantly lying and misrepresenting. That type of misconduct has not occurred between 1983 and now. The respondent says he did not have sufficient notice to procure witnesses or other evidence following the Review Board's remand in 1987. He says that no direction was given him and no contact was made until he received an order giving him 14 days to present expert

testimony. His basic argument against disbarment is that he did not receive any financial reward or benefit, that there was no permanent harm to the clients, that contrary to the apparent impression of the hearing panel the incidents were isolated, and that his practice history shows that there has been rehabilitation.

We judge that the hearing panel did not err in denying the request for continuance. In April 1987 the Review Board remanded the matter to the hearing panel, stating:

"[This matter is remanded] for the purpose of procuring professional psychological or psychiatric opinions pertaining to: (1) Alcohol or substance abuse; (2) Any other psychological or emotional impairment during the period from 1978 through 1982; and (3) To determine if there are any current mental or emotional problems that would impair Respondent's fitness to practice law."

On September 4 the Administrator moved to set the matter for a new hearing, stating "respondent has the burden of going forward with the evidence contemplated in the Review Board's order. At this time, the Administrator has no further evidence to present to the Hearing Board." In the motion the Administrator asked that the Hearing Board order the respondent, in compliance with the Commission's rule requiring the disclosure of witnesses, to advise the Administrator of all reports prepared by expert witnesses that the respondent intended to call. The respondent did not respond to the Administrator's motion, and on October 7, the panel pursuant to the rule entered an order granting the motion. The respondent made no response to the panel's order, and on November 16, the date set for the new hearing, the respondent appeared and moved orally for a continuance. In light of the respondent's studied inaction and all of the surrounding circumstances, there was no error in the

panel's denying what must be regarded as the indifferently made motion for continuance.

There is no factual question in the complaint here. What was alleged is not disputed. Considering the repeated and grave deceits, it cannot be said that the hearing panel and Review Board in recommending disbarment have urged an inappropriate sanction. What may be described as the self-destructive misconduct cannot be offset by what the respondent claims has been a subsequent period of professional integrity and responsibility, especially when that claim is called into question by his seeming indifference toward the opportunity for a second hearing. The dominant purposes of attorney disci-. pline are to protect the public interest and preserve the integrity of the profession. One may infer from the respondent's complaint that a continuance was not granted and that he was desirous of securing professional counselling to explain and maybe hereafter avoid a repetition of such professionally self-destructive episodes. However commendable and helpful may be the securing of professional help, it cannot lessen the responsibility of this court toward the public and the profession. It is the judgment of this court that the respondent be disbarred from the practice of law.

*Respondent disbarred.*

JUSTICE CALVO took no part in the consideration or decision of this case.